IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES S. STRICKLAND, | ) | Civil Action No.: 4:06-1344-GRA-TER |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| DR. ALEWINE; DR. GRECCO; DR. | ) | |
| KIRBY, DR. SAMPSOMN, NURSE | ) | |
| ANNETTE BROWN, and  SOUTH | ) | |
| CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, (SCDC), | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff filed this action under 42 U.S.C. § 1983,[1] on May 3, 2006. Plaintiff's motion

to amend his complaint to include defendants Donald Sampson, M.D., and Nurse Annette Brown

was granted and plaintiff filed an amended complaint on December 6, 2006. (Document #38). On

August 22, 2007, defendants filed a motion for summary judgment along with a memorandum,

exhibits, and affidavits in support of the motion. (Document #73).  By order of this court filed

August 28, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was

advised of the summary judgment procedure and the possible consequences if he failed to respond

adequately. (Document #77).

On October 11, 2007, plaintiff filed a motion to dismiss Dr. Kirby as a defendant. Defendants

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

filed a response asserting that they consent to the plaintiff's motion to dismiss Michael Kirby as a defendant. Therefore, it is recommended that plaintiff's motion (document #84) be granted and defendant Kirby be dismissed as a defendant.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs. Plaintiff asserts that since January 2000, defendants have denied him proper medical care and treatment, including proper medications for his seizure disorder, post traumatic stress disorder, asthma, and chronic neck, leg, and back pain. Plaintiff alleges that his medical diagnosis and/or medications were changed to meet the SCDC budget. As a result of the medical negligence and improper treatment his health "has gone down fast," he has chronic pain, loss of feeling, numbness, swelling, and damage to his right leg and that he has suffered emotional and mental anguish causing him to loose enjoyment of life and suffer unwanted pain and suffering. Plaintiff seeks monetary damages.

Defendants filed a motion for summary judgment asserting Eleventh Amendment Immunity, qualified immunity, SCDC is not a person amenable to suit, and that the plaintiff cannot show that the defendants deprived him of any rights or privileges under the constitution or federal law.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function

2

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  MEDICAL INDIFFERENCE

In summary, plaintiff alleges that he was not given proper treatment and medication which

has caused him mental and physical pain and suffering.

Defendants attached a copy of Dr. J. Glenn Alewine's affidavit along with plaintiff's medical summary documenting 646 medical/mental health encounters from January 16, 2001, to August 15, 2006 (Exhibits A-1 through A-4). Defendants argue that the medical summaries show they have not been deliberately indifferent to plaintiff's health and that none of his complaints were ignored. Defendants argue that they have provided care and treatment, including medications, for the plaintiff's asthma, seizure disorder, post traumatic stress disorder, chronic back, neck and leg pain, arthritis and any other medical and mental health problems. Dr. Alewine attests that plaintiff was first seen on January 16, 2001, with a history of bipolar disorder, panic attacks, asthma, back problems, arthritis, and seizure disorder. Alewine attests that at the time, plaintiff was taking Lithium, Phnenobarbital, Albuterol, Paxil, Atrovent inhaler and Xanax. Alewine attests that based on the SCDC medical records, plaintiff was continued on all of these medications except for ordering Librium to prevent withdrawal symptoms from the Xanax which was not continued. Alewine attests that a review of the records reveal plaintiff had 646 medical/mental health encounters by SCDC medical/mental health staff as well as outside consultants.  Alewine states that the SCDC doctors and outside health care providers have adjusted and/or changed the plaintiffs medical and mental health treatment, including medications, as his physical and mental conditions have changed. Alweine avers that at various times plaintiff refused medical and mental health care and treatment offered to him including the administration of medications and x-rays. In January 2006, Alewine attests that certain medications were discontinued for a period of time because plaintiff was selling them to other inmates. Alewine also attests that because of recent complaints by plaintiff of back and leg problems, a MRI was ordered which showed radiculopathy in his lumbar spine and plaintiff was

4

being evaluated by an orthopaedic surgeon, a neurologist and a neurosurgeon. Alewine attests that

plaintiff's medical and mental health problems are not serious or life threatening and do not require

immediate or emergency medical care. Alewine attests that plaintiff's complaints about his medical

and mental health care usually involve a disagreement about how he should be treated and what

medications he should receive. (Alewine's affidavit, Exhibit A). Thus, defendants argue plaintiff

fails to demonstrate that they or any other SCDC employees were deliberately indifferent to his

health or safety, and therefore, fails to state a claim pursuant to the Eighth Amendment. Furthermore,

defendants assert plaintiff has failed to provide any competent medical evidence regarding the

sufficiency of defendants' treatment of plaintiff's medical needs. Defendants argue plaintiff has not

offered any competent medical evidence to refute Dr. Alewine's sworn testimony outside of his own

allegations which amount to conjecture and are insufficient.

The undersigned finds that the plaintiff fails to show that defendants were deliberately

indifferent to his medical needs. It appears plaintiff is attempting to allege negligence or malpractice

on the part of defendants. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court

reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and

wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The court

stated:

> An inmate must rely on prison authorities to treat his medical needs;
> if the authorities fail to do so, those needs will not be met. . . .  We
> therefore conclude that deliberate indifference to serious medical
> needs of a prisoner constitutes the "unnecessary and wanton infliction
> of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed
> by the Eighth Amendment.  This is true whether the indifference is
> manifested by prison doctors in their response to the prisoner's needs
> or by prison guards in intentionally denying or delaying access to
> medical care or intentionally interfering with the treatment once

5

prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42

6

U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying  Daniels vs. Williams  and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical

7

judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. The medical records reveal hundreds of medical/mental health encounters and the fact that plaintiff received numerous medications and treatment for his complaints/conditions. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury. Additionally, plaintiff has failed to show that he had a serious medical need of which defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these defendants "shock the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be

granted in favor of defendants on this issue.

## D.  QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

9

> Government officials performing discretionary functions generally are
> shielded from liability for civil damages insofar as their conduct does
> not violate clearly established statutory or constitutional rights of
> which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's "conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known." "In determining whether the
> specific right allegedly violated was 'clearly established,' the proper
> focus is not upon the right at its most general or abstract level, but at
> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent." As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly

established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity

in their individual capacity. Thus, the undersigned recommends that the defendants' motion for

summary judgment be granted on this issue.


### E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money

damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity.

Defendants also argue that the action against the defendants should be dismissed as a matter of law

to the extent that they are sued in their official capacity because while acting in their official capacity

10

as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials

acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.


## F.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).


## III. CONCLUSION

Based on the reasons stated above, it is **RECOMMENDED** that the motion filed by the defendanst for summary judgment (document #73) be **GRANTED IN ITS ENTIRETY**  and that this matter be **DISMISSED** as no constitutional or statutory rights have been violated.

It is **FURTHER RECOMMENDED** that plaintiff's motion to dismiss Dr. Kirby as a defendant (document #84) be **GRANTED** and that all other outstanding motions be deemed **MOOT**.


Respectfully submitted,


s/Thomas E. Rogers, III
THOMAS E. ROGERS III
UNITED STATES MAGISTRATE JUDGE

January 14 , 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

12